UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>      Plaintiff,<br><br>  v.<br><br>U.S. BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>      Defendants. | Civil Action No. 17cv1208 (BAH) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFNDANTS' MOTION FOR SUMMARY JUDGMENT**

  On March 28, 2017, President Trump signed Executive Order 13783, announcing that his administration was taking steps to reopen federal coal leasing, including overturning Interior Secretarial Order ("SO") 3338—a moratorium on federal coal leasing imposed on January 15, 2016 by former Secretary of the Interior Sally Jewell.

  Upon learning of the president's order, that same day Plaintiff Center for Biological Diversity ("Center") submitted two identical requests under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"), to the Bureau of Land Management ("BLM") and the U.S. Department of the Interior ("Interior"), Office of the Secretary. These straightforward requests sought all "communications" in all forms discussing overturning SO 3338 within the bureau agencies of Interior, including BLM, and with other federal agencies, state and local government offices, the public, non-governmental organizations, and industry groups.

  The next day, on March 29, 2017, then-Secretary of the Interior Ryan Zinke officially

signed SO 3348, which overturned SO 3338, and immediately allowed new coal mining and leasing on federal public lands.

After no meaningful response from either of the Defendants, the Center filed the complaint in this action on June 20, 2017. Only after the Center filed its complaint and the Court ordered a production schedule did Defendants begin to search for and produce records. However, despite their efforts, Defendants' searches have failed to locate two related, and important, records or set of records: 1) any meaningful communication to or from former Secretary Ryan Zinke about SO 3338 that he overturned, or about SO 3348 that he signed himself, and 2) any draft of SO 3348.

While Interior's Office of the Secretary avers that its search was thorough, supporting evidence shows that its search was curtailed by political or other concerns, contrary to FOIA itself. Defendants fall far short, in their memorandum and sworn declarations, of "demonstrate[ing] beyond material doubt that its search as 'reasonably calculated to uncover all relevant documents.'"[1] *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011). Thus, Plaintiff respectfully requests that this Court order Interior to conduct a new search. *See Nat'l Sec. Counselors v. CIA*, 898 F.Supp. 2d 233, 262 (D.D.C. 2012) (district court has "broad equitable powers under the FOIA.)"

## FACTUAL BACKGROUND

### A. Plaintiff's FOIA Requests

On March 28, 2017, Plaintiff filed its FOIA requests. Defendants' SOF ¶ 1; Declaration of Amy R. Atwood ("Atwood Decl.") ¶ 5. On March 29, 2017, then Interior Secretary Ryan

---

[1] Indeed, if Defendants truly cannot find any meaningful record by the Secretary discussing SO 3338 or 3348 or any draft of SO 3348 other than the final, then it may also raise potential violations under the Federal Records Act, 44 U.S.C. § 31, as amended. *See, infra*, Section IV.

Zinke signed and finalized the Secretarial Order (No. 3348) in question, which overturned the Secretarial Order (No. 3338) referenced in Plaintiff's FOIA requests. Plaintiffs' SOF ¶ 3.

**B.     The Agencies' Responses**

The Department of the Interior acknowledged the receipt of Plaintiff's FOIA request on March 29, 2017 and assigned it tracking number OS-2017-00376. Atwood Decl. ¶¶ 5, 7; ECF No. 29-1 (Defendants' SOF) ¶ 2. On June 14, 2017, Plaintiff sent Interior a reminder email, asking when the agency would provide responsive records. Plaintiffs' SOF ¶ 5. Interior never responded to the June 14, 2017 communication by Plaintiff. *Id*. ¶ 7.

The Center submitted the same request to BLM pursuant to FOIA, also on March 28, 2017. Atwood Decl. ¶ 6. BLM eventually acknowledged receipt of Plaintiff's FOIA request, on August 10, 2017, after the Center filed its Amended Complaint in this case, ECF No. 06. Atwood Decl. ¶ 9; Plaintiff's SOF ¶ 6.

**C.     This Litigation**

Plaintiff filed its original Complaint, ECF No. 01, on June 20, 2017. Plaintiff's SOF ¶ 6. Plaintiff named BLM as the Defendant. *Id*. On July 26, 2017, Plaintiff amended its complaint to include the Department of the Interior as a co-defendant. Plaintiffs' SOF ¶ 7. On August 25, 2017, Defendants filed their Answer. Defendants' SOF ¶ 5. On September 7, 2017, the parties filed their first Joint Status Report, informing the Court that the Defendants had begun their search for responsive records and would release non-exempt records on an interim, monthly basis. Defendants' SOF at ¶ 6. Thereafter, from September 2017 until approximately April 2019, records were produced without much dispute or controversy. Defendants' SOF ¶ 7.

**D.     The Search for Missing Records**

On or before April 2019, Plaintiff informed that Defendants that, despite an initial search

3

yield of 2,338 pages of responsive pages, Declaration of Leah Fairman ("Fairman Decl.") at ¶ 8, there were zero meaningful records to or from then Interior Secretary Ryan Zinke. Plaintiffs' SOF ¶ 10; Defendants' SOF ¶ 8. After the White House "equities review" was complete in early 2020, there were still no meaningful records to or from Ryan Zinke, and no draft versions of the secretarial order. Plaintiffs' SOF ¶ 12; Defendants' SOF ¶ 9. On June 8, 2020, Defendants committed to this Court to conduct a revised search. Defendants' SOF ¶ 10. Although 14 pages of additional documents were found by Defendants, there will still no meaningful records to or from Ryan Zinke, nor were there any drafts of the secretarial order. Fairman Decl. ¶ 10; Plaintiff's SOF ¶¶ 13-14. Plaintiff suggested search methods that would likely find the records in question, but Defendants refused to conduct them "without a court order." Plaintiff's SOF ¶¶ 15-16; Atwood Decl. ¶ 12.

### E. Ryan Zinke's Phone Escapades and Unique Communication Patterns

Defendants admit there were "circumstances surrounding former-Secretary Zinke's lack of text messages" and other forms of electronic communication such as email. Dec. of David Alspach at ¶ 1. The former Secretary was issued his original government mobile phone. *Id.* at ¶ 2. Zinke was also issued an international phone. *Id.* at ¶ 3. In November 2018, the former Secretary lost his "original" phone and was issued a "replacement" phone. *Id.* at ¶ 4. The "original" phone contained sensitive government information but, inexplicably, government officials did a "wipe" of Zinke's international phone. *Id.* at ¶ 5. Then, Zinke found his "original" phone on December 14, 2018. *Id.* at ¶6. It was never searched. *Id.* at ¶¶ 7-11. Zinke resigned as Interior Secretary on January 2, 2019. *Id*. at 8.

### F. Other Major Players at Interior, Such as David Bernhardt, Were Not Searched

Current Interior Secretary David Bernhardt was on the Trump Transition Team for the

Interior Department. Declaration of William Snape ("Snape Decl.") ¶ 14. David Bernhardt became Deputy Secretary of the Interior in July 2017 (check). *Id.* David Bernhardt was previously Solicitor, i.e., the lead lawyer, at the Department of the Interior, from 2006 to 2009. *Id.* Plaintiff suggested several times that the same level of "personal" search of the departed Zinke be conducted on the records of David Bernhardt. See Exhibit B to Defendants' Motion for Summary Judgment; Snape Decl. ¶ 14; Atwood Decl. ¶ 12. Defendants replied that would "take a court order." *Id.*

## LEGAL ARGUMENT

**I.     Defendants' Burden to Obtain Summary Judgment in this FOIA Case**

The Freedom of Information Act (FOIA) was enacted in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 131 (D.D.C. 2013), *quoting ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011), *aff'd* 750 F.3d 927, 929 (D.C. Cir. 2014), giving the public the right to know "what the Government is up to." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004), *quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 772-73 (1989). FOIA requires each agency, "upon any request" to make "promptly available to any person," any records in its possession, unless the records may be withheld under one or more of nine defined exemptions. 5 U.S.C. § 552(a)(3)(A). Further, an agency such as the Department of the Interior "cannot limit its search" to restricted places "if there are others that are likely to turn up the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

FOIA cases are typically resolved on motions for summary judgment, but summary judgment can be granted only when there are no genuine disputes of material fact, and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

5

Department of the Interior bears the burden to prove "beyond material doubt … that it has conducted a search reasonably calculated to uncover all relevant documents." *Nat'l Security Counselors*, 960 F. Supp. 2d at 132 (alteration in original), *quoting Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007).  An agency must prove it released all non-exempt records. *See* FOIA, 552 U.S.C. § 552(a)(4)(B); *Reporters Comm. for Freedom of Press*, 489 U.S. at 755.

To prevail on summary judgement, Interior "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68 (citations omitted). Sworn declarations sufficient to justify summary judgment must, *inter alia*, identify the full scope of the files it maintains, and demonstrate that all files and databases searched can be reasonably expected to include records responsive to Plaintiff's request. *Id.* "If a review of the record raises substantial doubt, particularly in the view of 'well-defined requests and positive indications of overlooked materials' summary judgment is inappropriate." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003), *quoting Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

**II.     Defendants Failed to Conduct an Adequate Search for All Responsive Records**

Defendants main argument in this dispute is "the agency's failure to turn up specific documents" does not "undermine the determination that the agency conducted an adequate search for the requested records," Defendants' Memorandum of Points of Authorities ("Def. Mem.") at 5, *citing Iturralde*, 315 F.3d at 315. The problem with this assertion by Defendants is that it ignores the cases in this Circuit, cited approvingly by *Iturralde*, where "a court may place significant weight on the fact that a records search failed to turn up a particular document." *Id.* at 315, *citing Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993) (An agency's search

need not be in "bad faith" to be legally insufficient, and the agency's failure to search specifically identified places was sufficient to order a remand on the adequacy of the agency search).

For example, in *Valencia-Lucena v. U.S. Coast Guard*, an agency search was found to be inadequate because the offices searched were not the only places that could turn up the record systems requested, and agency declarations failed to explain why certain agency files were not searched. *Valencia-Lucena,* 180 F.3d at 327. *See also Oglesby*, 920 F.2d at 68 (the agency must show it made a "good faith" effort to conduct a search for the requested records and the agency's sworn declaration must adequately describe the agency's search).

Here, despite partially searching Secretary Zinke's personal emails, text messages, and other forms of record communication regarding Plaintiff's request, the agency's declarations do not demonstrate all of Zinke's files were searched, nor do the agency's declarations indicate any other high level official (e.g., David Bernhardt) was searched for personal emails, texts, and other forms of record communication. *See* Exhibit B to Defendants' Motion for Summary Judgment; Plaintiff' SOF ¶ 15. An agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), *quoting Oglesby*, 920 F.2d at 68. As *Campbell* further noted, the court applies a "reasonableness" test to determine the adequacy of the search methodology (citation omitted), "consistent with congressional intent tilting the scale in favor of disclosure." *Campbell,* 164 F.3d 20 at 27, *citing John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989). The Department of the Interior simply has not adequately explained – in a legally adequate manner -- why it could not have slightly broadened it search to find records that must almost certainly exist. *See* Exhibit B to Defendants' Motion for Summary Judgment;

Plaintiff' SOF ¶ 15.

### III. Plaintiff's Requested Search Parameters Remain Relevant and Should Be Ordered

The facts in the record, offered by Defendants themselves in their motion for summary judgment, indicate clearly what Interior's next general search steps should be:

> It seems logical to think other offices, both inside and outside the agency, may have dealt with the moratorium issue besides the land and mineral offices, correct? Why was only Zinke's personal email searched? Why were only his emails searched? If you recall, our request is not limited to emails and includes text messages, memos, meeting minutes, visitor logs, voicemails? Where there other any additional people in the OS beyond Zinke who should be searched?

*See* Exhibit B to Defendants' Motion for Summary Judgment (email from Plaintiff's counsel to Defendants, September 4, 2000). These questions were never answered except for Defendants' counsel's oral response, "We'd need a court order for that search." Plaintiff's SOF ¶ 16, *citing* Snape Decl. and Atwood Decl.

In essence, Plaintiff now seeks what Defendants said was the next step. *See* Attached Proposed Order by Plaintiff Center for Biological Diversity. An "agency cannot shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head." *Competitive Enterprise Inst. v. Office of Sci. and Tech. Policy*, 827 F.3d 145, 146 (D.C. Cir. 2016).

### IV. The Potential Relevance of the Federal Records Act

Further, this is not a case where "Plaintiff can offer nothing more than *speculation* that something more from the Secretary must exist somewhere." Def. Mem. At 7 (emphasis added), *citing Iturralde*, 315 F.3d at 316. It is unrebutted that not only have Defendants been unable to identify one meaningful record to or from the Interior Secretary regarding a secretarial order he literally signed, but also that Defendants have been unable to produce any draft of the final Secretarial Order (3348) overturning S.O. 3338. Plaintiffs' SOF ¶ 12.

This raises a host of issues under the Federal Records Act (FRA), which mandates:

> The head of each Federal agency shall establish and maintain an active, continuing program for the economical and efficient management of the records of the agency. The program, among other things, shall provide for "(1) effective controls over the creation and over the maintenance and use of records in the conduct of current business; (2) procedures for identifying records of general interest or use to the public that are appropriate for public disclosure, and for posting such records in a publicly accessible electronic format … .

44 U.S.C. § 3102.

It is also not speculative to think that the agency head who signs a Secretarial Order would possess records about that order, including at least one draft of that Order. *See* FRA, 44 U.S.C. §§ 3101-3107. As the FRA regulations state:

> What records are required to provide for adequate documentation of agency business?
>
> To meet their obligation for adequate and proper documentation, agencies must prescribe the creation and maintenance of records that:
>
> (a) Document the persons, places, things, or matters dealt with by the agency.
>
> (e) Document the formulation and execution of basic policies and decisions and the taking of necessary actions, including all substantive decisions and commitments reached orally (person-to-person, by telecommunications, or in conference) or electronically.
>
> (f) Document important board, committee, or staff meetings.

36 C.F.R. § 1222.22. Defendants rendition of the facts stretches credulity, in essence submitting that the final Secretarial Order (3348) was a result of miraculous and spontaneous agency action. But the regulations at 36 C.F.R § 1222.22, supported by the plain language of the statute FRA, indicate such spontaneous action is illegal. *See also Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991) (judicial review is available under the Federal Records Act in certain instances); *Competitive Enterprise Inst. v. EPA*, 67 F. Supp. 3d 23, 24 (D.D.C. 2014) (allowing Plaintiff's "APA claim based on the Agency's alleged non-compliance with FRA's enforcement scheme" to

9

proceed). Plaintiff's First Amended Complaint contains two Administrative Procedure Act (APA) claims relating to Plaintiff's search request. *See* ECF No. 27 (Joint Status Report, ¶ 2, "Plaintiff believes that … there might also be Federal Records Act issues associated with this case.").[2]

As a matter of rational administrative governance, as well as the FRA statute itself, the lack of any meaningful Secretary-level records and the lack of any draft of the Secretarial Order in question together mean that the agency needs to search harder in places that it normally may not search, especially here where Defendants have already admitted an unusual (albeit unsuccessful) search of former Secretary Zinke. *See, e.g.*, Fairman Decl. ¶ 10 (search of Secretary Zinke's personal email); Declaration of David Alspach ("Alspach Decl.") ¶¶ 4-11 (wild saga of Zinke losing then finding his government phone; the "wiping" of information from the wrong phone; Office of Inspector General involvement that is still unclear; and supposed inability to retrieve any information once the Secretary leaves office). In any event, Defendants cannot have it both ways. To the extent Defendants' protestations are accurate, Plaintiff may seek leave to amend its Complaint a second time, to incorporate violations of the FRA.

## CONCLUSION

For the foregoing reasons, Defendants have not met their burden to prevail on summary judgment. Plaintiff has demonstrated that Defendants' declarations and searches for responsive records still possess holes and gaps, and Defendants admit Plaintiff gave the agencies a viable

---

[2] Plaintiff does not yet seek leave to amend its First Amended Complaint, or alternatively, file a separate related case complaint until resolution of the FOIA search issue and potentially related issues. *See generally Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 152 (1980) ("[t]he [Freedom of Information Act] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained"… "and only the Federal Records Act, and not the FOIA, requires an agency to actually create records …").

search strategy to find records that almost certainly must exist. While Plaintiff's request for an expanded search is not burdensome, it is clearly political sensitive, which is not an acceptable legal factor under the FOIA. Plaintiff has also shown the implausibility of Defendants possessing no meaningful Secretary-level records on a Secretary-signed Secretarial Order, as well as the probable illegality of the agency possessing *zero* draft versions of the final Secretarial Order. Plaintiff requests this Court issue an order instructing Defendant Department of the Interior to expand its search beyond the personal emails and texts of former Secretary Ryan Zinke.[3] In addition, or alternatively, Plaintiff could receive leave from this Court to conduct limited discovery focusing on the agency search at the Department of the Interior, Office of the Secretary.[4]

In sum, Plaintiff requests this Court to: 1) Declare that Interior's search was inadequate with instructions on how to expand the current search; 2) Order Interior to conduct a revised search per the revised instructions; and 3) Permit Plaintiff to amend its Complaint and/or conduct limited discovery if a revised search still yields no relevant records.

---

[3] Plaintiff is also skeptical all information from Zinke's phones and other forms of electronic communication have been fully "wiped." *See* Alspach Decl. ¶ 5. Therefore, a Court Order directing Defendants to explore all ways of locating deleted messages is warranted. Mr. Alspach and Defendants do not explain whether all possible methods for resurrecting deleted text messages have been explored. Consequently, they should be ordered to do so, including by expending resources on technical assistance, if necessary.

[4] *See, e.g., Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99-100 (D.C. Cir 2012) (outlining requirements under which a party may seek discovery in a FOIA case); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (obligations of agency to retain records and possess a record management system).

DATED:  November 25, 2020	Respectfully submitted,

/s/ *William J. Snape, III*
WILLIAM J. SNAPE, III (D.C. Bar No. 455266)
Center for Biological Diversity
1411 K Street, NW
Washington, D.C. 20005
Telephone: 202-536-9351
bsnape@biologicaldiversity.org
wsnape@wcl.american.edu

/s/ *Amy R. Atwood*
AMY R. ATWOOD, D.C. Bar No. 470258
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org

*Counsel for Plaintiff*