UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL
DIVERSITY,

              Plaintiff,

   v.                                     Civil Action No. 17cv1208 (BAH)

U.S. BUREAU OF LAND
MANAGEMENT, *et al.*,

              Defendants.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants' reply brief and supporting materials not only fail to "show beyond material doubt . . . that [the agency] has conducted a search reasonably calculated to uncover all relevant documents," but also sadly raise issues of potential agency bad faith. *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (*quoting Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). To prevail on its motion for summary judgment, the burden is on Interior, not Plaintiff, to demonstrate "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Defendants effectively concede, as Plaintiff already demonstrated, that the Interior Department has yet to complete a reasonable search for all records Plaintiff requested, under the

Freedom of Information Act ("FOIA"), relating to a 2017 order by the Secretary of Interior reversing a 2016 moratorium on federal public lands coal leasing ("2017 Secretarial Order"). The 2017 Secretarial Order was a major federal agency action with significant impacts on the environment and public lands. Defendants cannot explain how they have failed to produce a single draft copy of the final 2017 Secretarial Order that former Secretary Ryan Zinke signed. Defendants attempt to meet their burden by claiming that Interior completed the searches Plaintiff requested, but this inaccurate factual conclusion is belied by the record before the Court.

Indeed, Defendants claim that they searched for responsive records, and even cobble together some background memos and group emails as examples, but cannot substantiate their preposterous suggestion that the final, signed, and executed 2017 Secretarial Order came into existence as if through some form of spontaneous administrative conception, without the production of a single draft (or meaningful dialogue with the Secretary himself).[1]  And, while Defendants correctly point out that they need not search "transition teams" under the FOIA, they fail to acknowledge that agency transition "landing teams" *are considered part of the federal agency for purposes of FOIA*, and ignore the pertinent fact that David Bernhardt, who replaced Mr. Zinke as Interior Secretary, served on the Interior Landing Team.

Moreover, Defendants concede that thus far, they have searched for responsive records in some, but not all, of the locations that Plaintiff specifically identified and asked the agency to search, thereby excluding responsive agency records that would have been located on former Secretary Zinke's personal devices. This raises unanswered material questions, such as: why did

---

[1] Defendants' Exhibit C – a short series of repetitive emails and recommendation memos – belies Defendants' conclusion there are meaningful records to or from Mr. Zinke on any legal draft text of an actual Secretarial Order that he signed.  The only record even remotely identified by Defendants, the recommendation memorandum that was prepared for the Secretary, contains no legal text for the Order itself or any interchange with the Secretary who penned his signature on the final document.

the agency search some of Zinke's files, but not others? And: how could the agency so mishandle preserving these indisputably responsive agency records, like a cabinet secretary's cell-phone data, with apparently no effort to back them up or deploy additional technical resources as needed to "uncover" them. *See Morley v. CIA*, 508 F.3d at 1114 (to meet FOIA burden, agency must "show. . . that it has conducted a search reasonably calculated to uncover all relevant documents") (internal quotation omitted).

To borrow Defendants' phrasing, Plaintiff is not looking for a "smoking gun," but an order directing the Interior Department to take reasonable steps necessary to locate these and other remaining responsive agency records that Plaintiff specifically asked for. It is Interior which has shot itself in the foot with its arguments, which are fundamentally bare.

## OUTSTANDING FACTUAL ISSUES

FOIA cases are typically resolved on summary judgment, but such motions can be granted only when there are no genuine disputes of material fact and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this case, Defendants' motion cannot be granted, as there are material facts in dispute as to whether Interior has reasonably calculated a search to uncover all relevant records. *See, e.g.*, Defendants' Statement of Genuine Issues, ¶¶ 17-18, ECF No. 32-1. For example, there are outstanding questions regarding drafts of the 2017 Secretarial Order and about Defendants' admitted failure to produce responsive agency records located on former Secretary Zinke's numerous cell phones, or similar files such as instant messages. As a result, Defendants' motion for summary judgment as to the adequacy of Interior's search cannot be granted, *inter alia*, as it does not satisfy Fed. R. Civ. P. 56(a).[2]

---

[2] The Declaration of Brett Myrick ("Myrick Decl.") does not present any new facts but merely adds window dressing to Defendants' **legal** arguments that they did not have to search certain files that reasonably did and still do possess records that are responsive to Plaintiff's FOIA request. *See* ECF No. 32-2. To the extent that the Myrick Declaration and its exhibits stand for

3

# ARGUMENT

### A. Defendant Department of the Interior Did Not Search Agency Records as Requested by Plaintiff

Defendant Interior claims that it complied with Plaintiff's request for a search. Def. Reply at 3. This is fundamentally false. As Defendants' own Exhibit B clearly shows, Plaintiff specifically asked the agency to search for responsive records that originated anywhere within (or initially, by entities technically outside of) the agency. But so far, Interior has only conducted searches of Mr. Zinke's official agency devices and has excluded records prepared by persons other than Mr. Zinke himself, such as members of the Interior Transition Landing Team (like current Secretary Bernhardt), and records located in the personal (or otherwise non-official) email accounts belonging to Mr. Zinke, Mr. Bernhardt or any others – or, for that matter, any text messages, memoranda, meeting minutes, visitor logs, voicemails created in the course of agency business at all. As Plaintiff explained before this briefing commenced:

> It seems logical to think other offices, both inside and outside the agency, may have dealt with the moratorium issue besides the land and minerals office, correct? Why was only Zinke's personal email searched? Why were only his emails searched? If you recall, our request is not limited to emails and includes text messages, memos, meeting minutes, visitor logs, voicemails? Weren't there any additional people in the OS beyond Zinke who should be searched?

Def. Ex. B (Plaintiff email to Defendants' counsel, September 2020). Defendants have never disputed these basic propositions, yet inexplicably, they also have never completed searches for responsive records that may reside in these places.

---

the proposition that Plaintiff rejected further search attempts by the agency, Plaintiff disputes that proposition as inconsistent with the factual evidence. To the extent that the Myrick Declaration and its exhibits indicate a legal disagreement about where the agency should and must search, Plaintiff does not dispute. *Id. Cf. Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (contradictions in agency FOIA declarations regarding search enough for remand to district court).

Defendants' only shield – and it is offered without any elaboration – is that the agency can only search for records "within its authority." Def. Reply at 3. As this brief and Defendants' own declarations show, however, there are several identifiable repositories that contain what are indisputably "agency records", which Plaintiff specifically asked Interior to search but which Interior has refused to search. These locations include, for instance, all three of Mr. Zinke's government phones, Mr. Zinke's other methods of agency communication including "personal" accounts, and records between Interior Department officials or staff and members of the agency's "landing team" that was installed after the Trump inauguration.[3]

Thus, the facts of this case are completely inapposite to those in *Truesdale v. U.S. Dep't of Justice*, 803 F. Supp. 2d 44 (D.D.C. 2011). As Defendants admit, when a FOIA requester directs the agency to the office to be searched "***and the agency complies with that direction***," the requester cannot later claim that the search was unreasonable or made in bad faith. Def. Reply at 3 (emphasis added), *citing Truesdale,* 803 F. Supp. 2d at 50. Here, regardless of whether Defendants' refusal is in "bad faith," it is not genuinely disputed that Defendants have simply refused, without any factual or legal support whatsoever, to search these locations at all. Defendants, in other words, have yet to "comply" with Plaintiff's request or to calculate a search to uncover all responsive records, and as a result, Defendants have yet to act reasonably under the law.

### B. FOIA Precedent in this Circuit Supports the Conclusion that Department of the Interior's Search was Inadequate as a Matter of Law

Defendants argue that their search was reasonable, relying most notably on *Iturralde v. Comptroller of Currency*, 315 F. 3d 311 (D.C. Cir. 2003). *See also Krikorian v. Dep't of State*,

---

[3] The Defendants' Declaration of David Alspach, discussed below, plainly reveals the gaps in Interior's search, and raises other troubling issues relating to Interior's compliance with the FOIA and other laws.

984 F.2d 461 (D.C. Cir. 1993). But *Iturralde* involves two highly relevant situations that support Plaintiff's position regarding the inadequacy of the agency's search. First, Plaintiff has shown "that the Department failed to search particular offices or files where the document might well have been found," *Iturralde,* 315 F. 3d at 315, such as other records generated in the course of official agency business but located on non-official devices controlled by Mr. Zinke or members of transition or "landing teams." *See also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Krikorian*, 984 F.2d at 468. Second, Plaintiff has shown how the "Department failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents," *Iturralde,* 315 F. 3d at 315, such as those generated or maintained on devices used by current Interior Secretary Bernhardt. *See also Valencia-Lucena*, 180 F.3d at 327-28.

### C. All Transition Team Records Given or Obtained by the Agency Are Subject to FOIA

Plaintiff agrees with Defendants' simplistic formulation that the "law in this Circuit is well-settled that FOIA does not extend to documents created or held by a President's Transition Team, *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, 405 F. Supp. 3d 127, 139 (D.D.C. 2019), and a responding agency has no duty to search the records of a Transition Team." Def. Reply at 7.

Defendants' myopic reliance on this case, however, fails for three reasons.  First, *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs* was not about a challenge to defendant agency's search, but about the relevance of various FOIA exemptions, which are not at issue in this litigation. 405 F. Supp. 3d 127 (D.D.C. 2019). Second, Plaintiff has never argued here that the Transition Team per se is subject to FOIA and is well aware that agency records must be

"either 'created' or 'obtained' by an agency subject to the FOIA." *Forsham v. Harris*, 445 U.S. 169, 182 (1980).

Finally, as to the crux of Defendants' chicanery on this point, certain members of a presidential "transition" team also become members of an agency's "landing" team. *See* Exhibit 13 (General Accounting Office Letter to Congress re: 2016-17 transition and Trump landing teams at 7);[4] *see also* Exhibit 14 (Partnership for Public Service and Center for Presidential Transition, AGENCY TRANSITION GUIDE).[5] Landing teams are teams of agency officials picked by the President to lead the agency on an interim basis between the start of inauguration until enough political appointees are confirmed by the Senate to lead that particular agency. *Id.* at 16-19 (discussing "landing teams" as part of the functioning agency of a new administration). These individuals, therefore, are agency officials and can "create" and/or "obtain" agency records subject to FOIA requests. *Forsham*, 445 U.S. at 182. Indeed, landing team records are, by definition, those that "integrate the documents with agency files or records." *Wolfe v. Dep't of Health & Human Servs.*, 711 F.2d 1077, 1080 (D.C. Cir. 1983). *See also* 5 U.S.C. §§ 3345-3346 (temporary agency directors); 3 U.S.C. § 102 and Notes, including P.L. 114-136 (2016) (transition reform measures).

### D. David Bernhardt, Among Others, Served on President Trump's Interior Landing Team

In addition to its subterfuge on the *existence* of the Interior Landing Team, Defendants have not disclosed *who* served on President Trump's Interior Landing Team. It appears that none other than the current Secretary of Interior, David Bernhardt, was leader of the Interior

---

[4] https://www.gao.gov/assets/690/687012.pdf
[5] https://ourpublicservice.org/wp-content/uploads/2017/08/6f0fe583ba38281b78fcf0756580aa39-1503408279.pdf

Landing Team. *See* Exhibit 15 (*Politico* list of individuals on Trump Landing Teams).[6] Thus, any records obtained or created by David Bernhardt during the early months of the Trump administration would be subject to FOIA and this search, just as with Secretary Zinke. *Forsham*, 445 U.S. at 182. That Bernhardt is *now* Secretary of the Interior (until the Biden administration is inaugurated) is a political consideration FOIA simply does not accommodate. Plaintiff is also puzzled as to why Defendants did not address or acknowledge this important fact in their briefing and declarations. It is undisputed that Interior did not search the records generated by landing teams or Mr. Bernhardt. *See, e.g.,* Defendants Statement of Material Issues and Myrick Decl., ECF Nos. 32-1 and 32-2.

### E. The Agency's Own Declaration Indicates Violations of the Federal Records Act Have Been Committed, Suggesting Potential Bad Faith in Its FOIA Search

The extraordinary Declaration of David Alspach ("Alspach Decl."), offered by Defendants to try to prove their search was reasonable, raises more questions than it answers. *See* ECF No. 29-3. Most notably, the Alspach Declaration admits that there were a series of errors and missteps in handling the phone data of former Secretary Zinke. *See generally Id.* ¶¶ 4-11. For example, after Mr. Zinke lost one government phone with "sensitive government information," the agency "wiped" the data from the wrong phone. *Id.* ¶ 5. The agency then claimed, without support or elaboration, that there is no way to retrieve this data. *Id.* ¶¶ 5, 8, 10-11. The agency also claims it has no access to Mr. Zinke's files after he resigned, and that it is powerless to find the correct passwords to these government phones issued to Mr. Zinke. *Id.* ¶ 11. The agency acknowledges that there is an ongoing Interior Office of Inspector General

---

[6] https://www.politico.com/tipsheets/politico-influence/2016/11/economic-landing-teams-announced-217516 (Bernhardt leading Interior Landing Team during transition).

("OIG") investigation into these or related matters, and that the OIG possesses records potentially relevant to Plaintiff's search. *Id.* at ¶ 9.

This behavior possesses legal consequences for the agency.  Under FOIA, the Alspach Declaration clearly states that many of Zinke's agency and relevant personal communication devices were not searched. *See, e.g.*, *Id.* ¶¶ 5, 9, 11. This alone defeats Defendants' motion for summary judgment. The Alspach Declaration also raises some disturbing issues of potential agency bad faith, and at the very least demonstrates agency malfeasance.[7] Finally, the Alspach Declaration seems to indicate that former Secretary Zinke was untruthful when filling out the government property and record forms to leave federal office. *Id.* at ¶ 7.

To prevail on summary judgment, Interior "must show that it made a ***good faith*** effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby,* 920 F.2d at 68 (emphasis added and citations omitted). Plaintiff, at this stage, need not actually prove bad faith, but "[i]f a review of the record raises substantial doubt, particularly in view of 'well-defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." *Iturralde*, 315 F.3d at 314 (quoting *Valencia-Lucena v. U.S. Coast Guard*,180 F.3d at 326). Discovery is not typical in FOIA cases, but a court may permit a requester to conduct discovery if there is a "reasonable *suspicion*" that the agency thwarted the purposes of FOIA: to allow the citizenry to know what their government is up to. *Landmark Legal Found. v. U.S. EPA*, 82 F. Supp. 3d 211, 220 (D.D.C. 2015) (emphasis in original).

---

[7] *See, e.g.*, Exhibit 16 (Letter of Complaint by CREW and Center for Biological Diversity on Federal Record Act violations raised by the destruction of government data through the Ryan Zinke cell phone escapade).  Further, Defendants never responded to Plaintiff's *other* Federal Record Act concerns, raised in Plaintiff's opening brief.

## CONCLUSION

Given the admissions in their declarations and holes in their legal arguments, Defendants are, at the very least, not entitled to a motion for summary judgement because they have not met the requirements of Fed. R. Civ. P. 56, because they have not complied with the FOIA to conduct a reasonable agency search, and because they have proffered explanations for behavior that likely violate federal law and indicate potential bad faith (not to mention arbitrary agency actions). In addition, Plaintiff alleges it has presented facts that demonstrate it is entitled to partial summary judgement on the inadequate search by the Department of the Interior. To remedy this legal violation(s) by the agency, Plaintiff requests a remand back to the agency to search in areas specified by Plaintiffs, or otherwise ordered by this Court.

DATED: January 5, 2021                     Respectfully submitted,

/s/ *William J. Snape, III*
WILLIAM J. SNAPE, III (D.C. Bar No. 455266)
Center for Biological Diversity
1411 K Street, NW
Washington, D.C. 20005
American University Law School
4300 Nebraska Ave, NW
Washington, D.C. 20016
Telephone: 202-536-9351
bsnape@biologicaldiversity.org
wsnape@wcl.american.edu


/s/ *Amy R. Atwood*
AMY R. ATWOOD, D.C. Bar No. 470258
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
(971) 717-6401
atwood@biologicaldiversity.org


*Counsel for Plaintiff*