**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br><br>Plaintiff,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>Defendants. | Civil Action No. 17-1208 (BAH)<br><br>Chief Judge Beryl A. Howell |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Center for Biological Diversity ("CBD"), a nonprofit "environmental conservation organization that works to protect native wildlife species and their habitats," Am. Compl. ¶ 1, ECF No. 6, challenges the response of defendant U.S. Department of the Interior ("DOI") to a six-part request submitted pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for records regarding an order issued by the Secretary of the Interior concerning the Federal Coal Program (the "FOIA Request"), *id.* ¶¶ 27, 30–31.  Specifically, plaintiff alleges in three claims that DOI failed to conduct an adequate search for responsive records (Count II), *id.* ¶¶ 49–53; failed to promptly disclose records responsive to plaintiff's FOIA request (Count III), *id.* ¶¶ 59–63; and failed to provide reasonably segregable portions of any responsive records exempt from disclosure under FOIA (Count IV), *id.* ¶¶ 70–75.[1]

---

[1]       In addition to these counts, the Amended Complaint pled that DOI failed to make a determination on plaintiff's FOIA request (Count I), Am. Compl. ¶¶ 40–43, and, in the alternative, violated the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, by unlawfully withholding or unreasonably delaying agency actions required by FOIA (Count V), Am. Compl. ¶¶ 82–87, and failing to comply with its FOIA obligations (Count VI), *id.* ¶¶ 93–97.  The Amended Complaint also pled all six counts against the Bureau of Land Management ("BLM").  *Id.* ¶¶ 36–39, 44–48, 54–58, 64–69, 76–81, 88–92.  The parties presented no argument on any claim except Count II, as alleged against DOI, in their pending cross-motions for summary judgment.  Defendants represented in their Motion for Summary Judgment, filed only by DOI, that "[p]laintiff d[id] not seek further searches by BLM nor d[id] [p]laintiff currently have any reason to challenge any redactions or exemption clams by [d]efendants," Def.'s Mot. Summ. J. ("Def.'s Mot.") at 1–2, ECF No. 29, and suggested that "the Court should dismiss the claims against BLM

Pending before the Court are the parties' cross-motions for summary judgment. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 29; Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot."), ECF No. 30. For the reasons set forth below, both parties' motions are denied.

# I.   BACKGROUND

Plaintiff's FOIA Request is briefly described below, followed by review of DOI's responses to the Request both before and after initiation of this lawsuit.

## A.   The FOIA Request

On March 28, 2017, then–President Trump signed Executive Order 13783, which, in relevant part, directed the Secretary of the Interior to "take all steps necessary and appropriate to amend or withdraw Secretary's Order 3338" and "to lift any and all moratoria on Federal land coal leasing activities related to Order 3338." Exec. Order No. 13,783, 82 Fed. Reg. 16,093, 16,096 (Mar. 28, 2017). That same day, in response to the Executive Order, plaintiff submitted two FOIA requests, one to DOI and the other to the Bureau of Land Management ("BLM"), seeking "all communications" "referencing Secretarial Order No. 3338." Pl.'s Statement of Material Facts Not in Genuine Dispute ("Pl.'s SMF") ¶ 1, ECF No. 30-2; *see also* Def.'s Statement of Material Facts Not in Genuine Dispute ("Def.'s SMF") ¶ 1, ECF No. 29-1; Def.'s Statement of Genuine Issues & Resp. Pl.'s Statement of Issues Not in Dispute ("Def.'s Resp. SMF") ¶ 1, ECF No. 32-1; Decl. of William J. Snape, III ("Snape Decl."), Ex. 1, Letter from Margaret E. Townsend, Open Gov't Staff Att'y, CBD, to Ryan Witt, BLM FOIA Officer (Mar.

---

as moot," *id.* at 2. In response to the Court's order for supplemental briefing addressing the plaintiff's claims against BLM and Counts I, III, IV, V, and VI against DOI, *see* Min. Order (Feb. 9, 2021), plaintiff advised that it "possesse[d] no further claims" against BLM and that its "remaining claims are against [DOI] on Counts II, III, and IV of its Amended Complaint," Pl.'s Suppl. Mem. Law & Facts ("Pl.'s Suppl. Mem.") at 1, ECF No. 39. In response to the Court's order to show cause why the undisputed claims against BLM and DOI should not be summarily dismissed, *see* Min. Order (Mar. 1, 2021), the parties instead stipulated to the dismissal of all claims against BLM and of Counts I, V, and VI against DOI, *see* Joint Mot. Dismissal, ECF No. 41, which dismissal was granted on March 3, 2021, *see* Min. Order (Mar. 3, 2021). Counts II, III, and IV of the Amended Complaint as alleged against DOI are thus the only claims still disputed by the parties.

28, 2017) ("BLM FOIA Request") at 1, ECF No. 30-6; Snape Decl. ¶ 16, ECF No. 30-3 (authenticating the BLM FOIA Request).[2]  The six parts of the Request specified that it encompassed "all records of discussions or correspondence with private parties, state or local officials, federal elected officials, Trump transition team members, other federal agencies, and internal agency staff" that referenced the Order, Pl.'s SMF ¶ 1; *see also* Def.'s Resp. SMF ¶ 1, "even if the Order is not explicitly discussed or referenced," BLM FOIA Request at 1–2; *see also* Am. Compl. ¶ 31.  The FOIA Request also defined the term "record" to be "consistent with the meaning of the term under FOIA," and therefore to include a wide variety of file formats, such as voicemails, text messages, instant messages, and chats, in addition to more traditional communications.  BLM FOIA Request at 2.

### B.    Processing of the Request and Procedural History

On March 29, 2017, only one day after issuance of Executive Order 13783, then–Secretary of the Interior Ryan Zinke signed Secretarial Order No. 3348, which order "revoke[d] Secretary's Order 3338," effective immediately.  Sec'y of Interior, *Secretarial Order No. 3348, Concerning the Federal Coal Moratorium* 1 (Mar. 29, 2017).  On the same day, DOI acknowledged receipt of the FOIA Request and assigned it tracking number OS-2017-00376. Pl.'s SMF ¶ 5; Def.'s Resp. SMF ¶ 5; Def.'s SMF ¶ 2; Decl. of Amy R. Atwood ("Atwood Decl.") ¶ 7, ECF No. 30-4; Snape Decl., Ex. 3, Letter from Clarice Julka, FOIA Officer, Office of the Sec'y ("OS"), DOI, to Margaret E. Townsend, Open Gov't Staff Att'y, CBD (Mar. 29, 2017) at 1, ECF No. 30-8.

---

[2]    The record does not include the FOIA Request submitted by plaintiff to DOI.  The parties agree, however, that the requests submitted to DOI and BLM were identical except insofar as they referred to BLM or DOI, Pl.'s SMF ¶ 2; Def.'s Resp. SMF ¶ 2, and do not contest either the scope or the content of the FOIA Request.  Thus, the Court relies on the language of the BLM FOIA Request in describing the DOI FOIA Request at issue in this case. As the remaining disputed claims relate solely to the DOI FOIA Request, *see supra* note 1, BLM's search for and production of responsive records are not discussed.

Several months passed without DOI making any further response to plaintiff.  *See* Pl.'s SMF ¶¶ 5–6; Def.'s Resp. SMF ¶¶ 5–6.  In June 2017, three months after submission of the FOIA Request, plaintiff requested that the agency provide an estimated completion date for its response to the FOIA Request.  Snape Decl., Ex. 4, Letter from Margaret E. Townsend, Open Gov't Staff Att'y, CBD, to Clarice Julka, FOIA Officer, OS, DOI (June 14, 2017) at 2–3, ECF No. 30-9; Snape Decl. ¶ 16; Atwood Decl. ¶ 8.  Around the same time, on June 20, 2017, plaintiff initiated this litigation, naming only BLM as a defendant.  *See* Compl., ECF No. 1. About a month later, on July 26, 2017, having received no response from DOI to its June 2017 correspondence, plaintiff amended its complaint to include DOI as a defendant.  *See* Am. Compl.; Pl.'s SMF ¶ 8; Def.'s Resp. SMF ¶ 8.

Soon after plaintiff filed its Amended Complaint, DOI "beg[an] searching for and reviewing records . . . responsive to" the FOIA Request.  Joint Status Report (Sept. 7, 2017) ¶ 3, ECF No. 9.  Under the Court's supervision, from September 2017 to early 2019, DOI produced responsive records to plaintiff, including responsive records from DOI's Office of the Secretary ("DOI-OS"), "with no serious issues or disagreements between the parties."  Pl.'s SMF ¶ 11; *see also* Def.'s Resp. SMF ¶ 11; Def.'s SMF ¶ 7; Pl.'s Resp. Def.'s Statement of Material Facts ("Pl.'s Resp. SMF") ¶ 7, ECF No. 30-2; Second Joint Status Report (Nov. 30, 2017), ECF No. 10; Third Joint Status Report (Mar. 16, 2018), ECF No. 11; Fourth Joint Status Report (Aug. 15, 2018), ECF No. 12; Fifth Joint Status Report (Nov. 9, 2018), ECF No. 13; Joint Status Report (Jan. 29, 2019), ECF No. 15.  During this time, according to the acting DOI-OS FOIA Officer, DOI-OS "identified likely custodians in the OS" and sent the FOIA request to those individuals with instructions to "search all electronic and paper files in their possession" based on "the subject matter of Secretarial Order No. 3338," the order repealed by Secretary Zinke's signing of

4

Secretarial Order No. 3348.  Decl. of Leah Fairman ("Fairman Decl.") ¶ 4, ECF No. 29-2; *see also* Def.'s SMF ¶ 16; Pl.'s Resp. SMF ¶ 16.  The identified custodians each carried out an initial search.  Fairman Decl. ¶ 4.  DOI-OS also "asked each custodian to identify other custodians who were likely to have additional responsive documents," and undertook a similar process with the new list of custodians.  *Id.* ¶ 5; *see also* Def.'s SMF ¶ 17; Pl.'s Resp. SMF ¶ 17.  As Secretarial Order No. 3338 concerned the Federal Coal Program, the agency's initial efforts "focused on the minerals management mission of" DOI.  Fairman Decl. ¶ 6; *see also* Def.'s SMF ¶¶ 17–18; Pl.'s Resp. SMF ¶¶ 17–18.  The initial search ultimately "yielded 2,338 responsive pages" of records. Fairman Decl. ¶ 8; *see also* Def.'s SMF ¶ 19; Pl.'s Resp. SMF ¶ 19.

At the close of the initial search, plaintiff "expressed concern over the apparent lack of Secretarial communications," that is, communications directly to or from Secretary Zinke, in DOI's rolling productions of records.  Fairman Decl. ¶ 7; *see also* Def.'s SMF ¶ 20; Pl.'s Resp. SMF ¶ 20.  DOI-OS thus expanded its search to include records in the files of the Secretary, which were searched by his Special Assistant, and his Chief of Staff, Fairman Decl. ¶ 7; Def.'s SMF ¶ 21; Pl.'s Resp. SMF ¶ 21, but reported that no new records were located, Fairman Decl. ¶ 7; Def.'s SMF ¶ 22; Pl.'s Resp. SMF ¶ 22.  Consequently, in their April 2019 status report, the parties raised an "area of disagreement . . . regarding records pertaining to the Interior Secretary and his office," Joint Status Report (Apr. 8, 2019) at 1, ECF No. 17, namely, plaintiff's continued concern that DOI's productions did not include meaningful correspondence to or from Secretary Zinke, Fairman Decl. ¶ 9; Pl.'s Mem. P. & A. Supp. Pl.'s Mot. Partial Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s Opp'n") at 3–4, ECF No. 30-1.

The parties agreed to confer about the absence of Secretary-level records, *see* Joint Status Report (July 30, 2019) at 1, ECF No. 18, but encountered delays in the production of potentially

relevant documents that were subject to "review[] by the White House for equities," Joint Status
Report (Aug. 26, 2019) at 1, ECF No. 19; *see* 43 C.F.R. §§ 2.12, 2.13.  The White House
completed its review in February 2020, Pl.'s SMF ¶ 13; Def.'s Resp. SMF ¶ 13, and DOI
subsequently released its final production of documents, consisting of 181 additional pages, to
plaintiff, Joint Status Report (Mar. 2, 2020) ¶ 1, ECF No. 25.  This production did not include
"any communications from the Secretary or Deputy Secretary of the Interior" or "any records
that would be considered a draft of final Secretarial Order No. 3348."  Pl.'s SMF ¶ 13; Def.'s
Resp. SMF ¶ 13.  As a result, upon review of this final release of documents, plaintiff continued
to "believe[] that there might be some records [from DOI-OS] still possibly missing."  Joint
Status Report (June 8, 2020) ("June 2020 JSR") ¶ 2, ECF No. 26.

        In an effort to address this concern, plaintiff requested, and DOI agreed to conduct, "a
supplemental search for documents related to then–Secretary Zinke's involvement in the
promulgation of Secretarial Order No. 33[4]8," based on search terms provided by plaintiff.
Fairman Decl. ¶ 9; *see also* June 2020 JSR ¶¶ 3–4; Def.'s SMF ¶¶ 24–26; Pl.'s Resp. SMF
¶¶ 24–26.  DOI-OS FOIA staff proceeded to search Secretary Zinke's government email account
and his personal email account, as well as DOI's document tracking system, using DOI's "email
and correspondence databases," with the search terms suggested by plaintiff of "moratorium,"
"coal moratorium," and "coal lease."  Fairman Decl. ¶ 10; *see also* Def.'s SMF ¶¶ 24–26; Pl.'s
Resp. SMF ¶¶ 24–26.  The supplemental search generated fourteen pages of documents "not
previously identified by other custodians during the initial search."  Fairman Decl. ¶ 10.  In July
2020, DOI produced all responsive, non-exempt material collected in the supplemental search to
plaintiff.  *Id.*; Def.'s SMF ¶ 27; Pl.'s Resp. SMF ¶ 27.  Still missing from the production were

substantial Secretary-level communications and any draft of Secretarial Order No. 3348.  Pl.'s SMF ¶ 15; Def.'s Resp. SMF ¶ 15.[3]

In a final attempt to resolve their dispute about these allegedly missing records, DOI "agreed to provide [p]laintiff with a detailed description of its search for responsive documents" and to confer with plaintiff about "any further suggestions it may have for a further search, and any additional follow-up searches" by DOI-OS, as memorialized in the parties' next status report submitted to the Court.  Joint Status Report (Aug. 10, 2020) ¶ 3, ECF No. 27.  The parties accordingly "held a series of telephone conferences," Joint Status Report (Sept. 11, 2020) ("Sept. 2020 JSR") ¶ 1, ECF No. 28, during which plaintiff raised a number of concerns with the "scope and manner" of the agency's search for DOI-OS records, *id.* ¶ 2.  Specifically, plaintiff pointed to DOI's failure to produce drafts of Secretarial Order No. 3348 and communications to or from Secretary Zinke related to the Order, which, in its view, suggested that DOI had failed to adequately search all of Secretary Zinke's personal and government communication platforms and had failed to search the records of members of the Trump Transition Team for DOI, including the eventual Deputy Secretary of the Interior and Zinke's successor as Secretary, David Bernhardt.  Pl.'s SMF ¶ 17; Def.'s Resp. SMF ¶ 17; Sept. 2020 JSR ¶¶ 1–2.

---

[3]     In response to plaintiff's contention that the July 2020 production "failed to provide . . . any Secretary-level communications," Pl.'s SMF ¶ 15, DOI notes that the production included "two calendar invite emails from then-Secretary Zinke to staff (including the Deputy Secretary) inviting the[m] to a briefing on the 'Secretarial Order on Coal Moratorium,'" Def.'s Resp. SMF ¶ 15, but does not submit that any additional secretarial communications were produced, *see generally id.*; *see also* Decl. of Brett H. Myrick ("Myrick Decl.") ¶ 23, ECF No. 32-2. Moreover, DOI's primary evidence to dispute plaintiff's contention, an exhibit apparently consisting of the allegedly produced calendar invitations and a briefing document included as a calendar attachment, Def.'s Reply Supp. Def.'s Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Def.'s Reply"), Ex. C, ECF No. 32-4, not only has no indicia of having actually been given to plaintiff, but also has not been authenticated in any of DOI's declarations and therefore cannot be considered.  *See Konah v. District of Columbia*, 971 F. Supp. 2d 74, 80 (D.D.C. 2013); *Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92, 97 (D.D.C. 2010) ("'[U]nsworn, unauthenticated documents cannot be considered on a motion for summary judgment.'" (alteration in original) (quoting *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993))).

The parties dispute at some length the details of a September 9, 2020 conference call between their respective counsel held as part of this conferral process.[4]  The disputed particulars of the September 9 call notwithstanding, the parties agree that they were unable to resolve their disagreements and that DOI did not conduct the additional searches of Secretary Zinke's personal files and Trump Transition Team records suggested by plaintiff.  The parties accordingly advised the Court in their next status report that they had reached deadlock on the issues surrounding DOI's search for Secretary-level communications and for drafts of Secretarial Order No. 3348, Sept. 2020 JSR ¶¶ 1–4, and a schedule for dispositive motions was set, *see* Min. Order (Sept. 14, 2020).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "'[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law.'"  *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see also* Fed. R. Civ. P. 56(a).  "In FOIA cases, 'summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'"  *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students*

---

[4]      Plaintiff contends that, during the call, DOI refused to search the additional locations and types of records suggested by plaintiff, in particular, the personal files and email accounts of Secretary Zinke and the records of the Trump Transition Team for DOI, without a court order.  Pl.'s Opp'n at 4; Snape Decl. ¶ 14; Atwood Decl. ¶ 12; Pl.'s SMF ¶¶ 17–18.  DOI, in contrast, claims that its counsel advised plaintiff that its requests "were outside the power of the Department" because they called for searches of persons and entities outside the agency or for resolution of complex technical issues and therefore would require a court order.  Def.'s Resp. SMF ¶ 18; *see also* Myrick Decl. ¶¶ 8–15.  The agency further claims that plaintiff "declined" its offer to design a further search of records under DOI's direct control and that DOI therefore completed all searches sought by plaintiff.  Def.'s SMF ¶ 30; *see also*

*Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'" (omission in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978))).  Most FOIA cases "can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

FOIA was enacted "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request." *DiBacco v. Army* ("*DiBacco I*"), 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  Agencies are therefore statutorily mandated to "make . . records promptly available to any person" who submits a request that "reasonably describes such records" and "is made in accordance with [the agency's] published rules."  5 U.S.C. § 552(a)(3)(A).  Should an agency fail to comply with these obligations, FOIA authorizes federal courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).

An agency responding to a FOIA request is "simply required to 'conduct[] a search reasonably calculated to uncover all relevant documents.'"  *In re Clinton*, 973 F.3d 106, 116 (D.C. Cir. 2020) (alteration in original) (emphasis omitted) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).  Thus, when reviewing a challenge to the adequacy of an agency's search for responsive records, "a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the *search* for [the requested] documents was *adequate*.'"  *Id.* (alteration and

---

Myrick Decl. ¶ 22.  Plaintiff not only denies this representation, but also claims that no offer to undertake further searches was made.  Pl.'s Resp. SMF ¶¶ 28–30.

emphasis in original) (quoting *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

In this regard, an agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents" and that it "perform[ed] more than a perfunctory search" to identify responsive records. *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks omitted); *see also Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) ("'In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990))). At the summary judgment stage, an agency "can satisfy this burden through a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 368 (D.C. Cir. 2020) (quoting *Oglesby*, 920 F.2d at 68); *see also Reps. Comm. for Freedom of the Press v. FBI* ("*Reps. Comm.*"), 877 F.3d 399, 402 (D.C. Cir. 2017). Courts "accord such affidavits 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Machado Amadis*, 971 F.3d at 368 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

If an agency has made a *prima facie* showing of the adequacy of its search, the FOIA requester bears the burden of overcoming this presumption of good faith by "provid[ing] countervailing evidence as to the adequacy of the agency's search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal quotation marks omitted). "'[S]ummary

judgment is inappropriate' if 'a review of the record raises substantial doubt' as to the search's

adequacy, 'particularly in view of well defined requests and positive indications of overlooked

materials.'"   *Reps. Comm.*, 877 F.3d at 402 (alteration in original) (quoting *Valencia-Lucena v.*

*U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999)); *see also Aguiar*, 865 F.3d at 738.

## III.   DISCUSSION

The parties' cross-motions for summary judgment dispute only the adequacy of DOI's

search for responsive records.  *See* Def.'s Mot. at 2; Pl.'s Mot. at 1; Pl.'s Suppl. Mem. at 1;

Def.'s Resp. Pl.'s Suppl. Mem. ("Def.'s Suppl. Mem.") at 1, ECF No. 40.  First, plaintiff asserts

that DOI's search was unreasonable and inadequate because the agency did not produce or

identify in response to the FOIA Request any drafts of Secretarial Order No. 3348 or any

substantial communications directly to or from Secretary Zinke about either Secretarial Order

No. 3348 or the order it repealed, Secretarial Order No. 3338.  Pl.'s Opp'n. at 2; Pl.'s Reply Br.

Supp. Partial Mot. Summ. J. & Opp'n Defs.' Mot. Summ. J. ("Pl.'s Reply") at 2, ECF No. 34.

According to plaintiff, these documents fell squarely within the scope of the FOIA Request,

which "sought all 'communications in all forms discussing overturning [Secretarial Order No.]

3338" within DOI and with other government actors and external stakeholders, Pl.'s Opp'n at 1,

and consequently, the agency should be required "to conduct a new search" to locate the records,

*id.* at 2; *see also* Pl.'s Reply at 10; Pl.'s Suppl. Mem. at 4.

In addition to the notable absence of drafts of Secretarial Order No. 3348 and related

Secretary-level communications, plaintiff points to three categories of records as to which it

believes DOI's search was inadequate: (1) personal devices and communications of former

Secretary Zinke and other agency officials, *see* Pl.'s Opp'n. at 7; Pl.'s Reply at 5; Pl.'s Suppl.

Mem. at 5, 7; (2) government devices and accounts used by former Secretary Zinke and related

records held by DOI's OIG, *see* Pl.'s Opp'n at 4, 7–8; Pl.'s Reply at 4–5; Pl.'s Suppl. Mem. at 7–10, and (3) records held by or related to the Trump Transition Team and David Bernhardt, who was the Trump Transition leader for DOI and later became Deputy Secretary of the Interior and, eventually, Zinke's successor as Secretary of the Interior, *see* Pl.'s Opp'n at 4–5; Pl.'s Reply at 7–8; Pl.'s Suppl. Mem. at 5–6.[5]

The significance of the missing drafts and Secretary-level communications cannot be understated in assessing the sufficiency of DOI's declarations describing the search.  That issue is addressed first before turning to consideration of the three additional alleged deficiencies in DOI's search.

### A.   Missing Drafts of Secretarial Order No. 3348 and Secretary-Level Communications

Plaintiff first contends that DOI's failure to produce any drafts of Secretarial Order No. 3348 and any substantial communications directly to or from Secretary Zinke about either Secretarial Order No. 3338 or Secretarial Order No. 3348 indicates that its search was not adequate.  Pl.'s Opp'n. at 2; Pl.'s Reply at 2.  In response, DOI counters that plaintiff's bare assertion "that something more from the Secretary must exist somewhere" cannot render the agency's search inadequate, Def.'s Mem. P. & A. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 7, ECF No. 29, relying on the D.C. Circuit's statement in *Iturralde v. Comptroller of Currency*, 315 F.3d 311 (D.C. Cir. 2003), that "[m]ere speculation that as yet uncovered

---

[5]     At times, plaintiff appears to argue that DOI's search was inadequate because plaintiff "specifically asked" the agency to search these specific repositories and the agency declined to do so.  Pl.'s Reply at 5; *see also, e.g.*, Pl.'s Opp'n at 4.  This argument fails because an agency's failure to carry out every step recommended by a FOIA requester does not automatically render the search not "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325 (internal quotation marks omitted).  Likewise, DOI's counterargument that, "[w]here a FOIA requester directs the agency to the office to be searched, and the agency complies with that direction, the requester cannot later complain that the search was unreasonable or made in bad faith," Def.'s Reply at 3 (citing *Truesdale v. Dep't of Justice*, 803 F. Supp. 2d 44, 50 (D.D.C. 2011)), is unpersuasive because DOI did not in fact fulfill all of plaintiff's requests with respect to the search.

documents may exist does not undermine the finding that the agency conducted a reasonable search for them," *id.* at 316 (alteration in original) (internal quotation marks omitted).

As DOI acknowledges, *see* Def.'s Reply at 4, the rule set forth in *Iturralde*, that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," is subject to an exception "[i]n certain circumstances" deemed "sufficient to overcome an adequate agency affidavit," 315 F.3d at 315.  Among those circumstances is a case in which a FOIA requester points to "evidence that would indicate that at the time the [agency] searched its files there was reason to believe that [the missing documents were] in those files." *Id.*  In such cases, "[t]he agency's failure to locate a document that the evidence indicates likely existed at the time of the search . . . may give rise to 'material doubt' about the adequacy of the agency's affidavits."  *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 36 (D.D.C. 2017) (citing *Valencia-Lucena*, 180 F.3d at 325; *Iturralde*, 315 F.3d at 315).

As to the missing drafts of Secretarial Order No. 3348, plaintiff points to the fact that the Order was signed by Secretary Zinke on March 29, 2017, which fact alone gives ample cause to believe that at the time of DOI's initial search later that year, at least one draft should have been among the agency's records.  Plaintiff correctly notes that DOI is required, under the Federal Records Act ("FRA"), 44 U.S.C. §§ 3101–3107, and its implementing regulations, to "[d]ocument the formulation and execution of basic policies and decisions and the taking of necessary actions, including all substantive decisions and commitments reached orally (person-to-person, by telecommunications, or in conference) or electronically," 36 C.F.R. § 1222.22(e); *see also* 44 U.S.C. § 3101; Pl.'s Opp'n at 8–10.  Thus, affording DOI the "presumption of regularity" to which it claims to be entitled, Def.'s Suppl. Mem. at 6, that agency employees comply with applicable law, plaintiff has met its burden to show that drafts or, at a minimum,

notes or other documents reflecting the formulation of, Secretarial Order No. 3348 must have existed at the time of the search.  *See, e.g.*, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[T]here is a presumption of legitimacy accorded to the Government's official conduct."); *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("Ordinarily, we presume that public officials have 'properly discharged their official duties.'" (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996))); *Stone v. Stone*, 136 F.2d 761, 763 (D.C. Cir. 1943) ("In an action which challenges the conduct of a public officer, a presumption of law is indulged in his favor that his official duties were properly performed.").  Even without the backdrop of the FRA, plaintiff's belief that drafts of the Order may exist carries more than just speculative weight.  To accept the premise that no such documents exist would lead to the conclusion that Secretarial Order No. 3348, a Cabinet-level directive directly responsive to Executive Order 13783, signed by Secretary Zinke the day after Executive Order 13783 was issued, was somehow developed in the intervening twenty-four-hour period without any prior planning, revisions, review, or discussions within DOI or between DOI and the White House.  That conclusion defies credulity.

Similarly incredible, especially in the absence of drafts of Secretarial Order No. 3348, is the suggestion, raised by the lack of what plaintiff characterizes as "meaningful" Secretary-level communications located by the agency, Pl.'s Opp'n at 2, that Secretary Zinke himself neither reviewed even one draft of, nor engaged in any substantive communications about, the order he was poised to sign.  As to the absence of these records, plaintiff relies on "the implausibility of [d]efendants possessing no meaningful Secretary-level records on a Secretary-signed Secretarial Order."  *Id.* at 11; *see also* Pl.'s Reply at 2.  DOI's response of reducing this claim to speculation, *see* Def.'s Reply at 5–6; Def.'s Suppl. Mem. at 6–7, rests on an alternative theory that Secretary Zinke adopted an order overturning current agency practice and precedent without

engaging in any substantive discussions or communications about either the decision to implement the order or the language to be used.  The agency's alternative theory is indeed highly implausible and, if true, deeply troubling.  Plaintiff's position that this deeply troubling conclusion is likely incorrect, and that records reflecting both drafts of the Order and communications with Secretary Zinke about the Order therefore likely exist, is not speculative, in light of DOI's obligations under the FRA, to preserve records, and under the Administrative Procedure Act, to refrain from adopting policies that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or enacted "without observance of procedure required by law," 5 U.S.C. § 706(2).  In order to fulfill these duties, DOI would necessarily have had to engage in some deliberative, recorded process before adopting Secretarial Order No. 3348.

Of course, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde*, 315 F.3d at 315.  Here, however, the combination of the missing drafts and Secretary-level communications with notable gaps in DOI's declarations to explain those holes in the record "give[s] rise to 'material doubt' about the adequacy of the agency's affidavits."  *Lamb*, 228 F. Supp. 3d at 36 (citations omitted).  None of DOI's declarations, nor its briefing, provides any explanation for the total absence of any drafts of Secretarial Order No. 3348 from its productions.  *See* Def.'s Mem.; Def.'s Reply; Def.'s Sur-Reply Resp. Pl.'s Reply Supp. Cross-Mot. Summ. J. ("Def.'s Sur-Reply"), ECF No. 37; Def.'s Suppl. Mem; Fairman Decl.; Decl. of David D. Alspach ("Alspach Decl."), ECF No. 29-3; Myrick Decl.  These omissions "make[] it impracticable for the court to review the adequacy of [DOI's] search" for these records because, at summary judgment, the Court "must be able to ascertain if [the agency] has explained the . . .

absence" of responsive records that the FOIA requester has shown once existed.  *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (emphasis omitted).  DOI does not appear to contest that drafts of Secretarial Order No. 3348 would be responsive to plaintiff's FOIA Request, nor does it contend that no drafts of the Order were created, but the agency has not even attempted to explain its failure to produce them.

Further, in the years since *Iturralde* was decided, the D.C. Circuit has found that "in some cases, failure to find a record that once existed, coupled with a conclusory affidavit about the methodology of the search, can weaken the agency's claim for summary judgment."  *Aguiar*, 865 F.3d at 739 (citing *Weisberg*, 627 F.2d at 370–71).  "[A]n affidavit containing 'no information about the search strategies of the [agency] components charged with responding to [a] FOIA request' and providing no 'indication of what each [component's] search specifically yielded'" is deemed conclusory and therefore "is inadequate to carry the government's summary-judgment burden."  *Reps. Comm.*, 877 F.3d at 403 (alterations in original) (quoting *Morley*, 508 F.3d at 1122).  Of particular relevance, under this standard, an affidavit that identifies agency components "tasked with conducting a search" of certain files but does not explain "how [the components] searched within those files," *Aguiar*, 865 F.3d at 738, including by identifying the employees chosen to conduct the search and "disclos[ing] the search terms used by the [agency] and the type of search performed," is insufficient, *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015) (internal quotation marks omitted); *see also Morley*, 508 F.3d at 1122.  Applying those criteria here, DOI's primary declaration in support of its search fails to pass muster.

DOI-OS's acting FOIA Officer explains that her office "identified likely custodians in the OS" and requested that those custodians "search all electronic and paper files in their possession, and . . . base the search on the subject matter of Secretarial Order No. 3338."  Fairman Decl. ¶ 4.

16

She further states that "[e]very search in the initial search was done by the applicable custodian," but does not describe how those custodians undertook the search within their files. *Id.* This process was repeated with an additional set of individuals identified by the initial custodians. *Id.* ¶ 5. Though the declaration includes a list of identified custodians by name and title, it does not indicate whether that list consists only of initially identified custodians or also extends to the expanded set of custodians. *See id.* ¶ 6.

In addition, the agency provides no information as to which files individual custodians were directed to search and, as plaintiff observes, does not indicate whether the definition of "files" provided to custodians included the "text messages, memoranda, meeting minutes, visitor logs, [and] voicemails" specifically sought by the FOIA Request. Pl.'s Reply at 4. As to search terms, DOI states that custodians were instructed to "base their search on the subject matter of Secretarial Order No. 3338," Fairman Decl. ¶ 4, but this vague statement does not provide sufficient information as to the exact search terms used by custodians in carrying out the search, an omission that is of particular concern with respect to custodians' search of electronic records. Nor does the declaration provide a clear idea of how custodians went about retrieving and searching their electronic files. DOI's representation that, "[u]nlike the initial search," its second supplemental search "us[ed] Departmental email and correspondence databases" and three specific search terms, *id.* ¶ 10, suggests that the custodians employed some other approach, but does not fill in that gap. Even the description provided of the second supplemental search is ambiguous as to whether DOI-OS searched the relevant databases only for Secretary Zinke's records or more broadly. *See id.* Nor does DOI sufficiently explain its decision to confine its supplemental searches of DOI-OS records to Secretary Zinke's files to the exclusion of other high-ranking officials or individuals in DOI-OS likely to receive relevant documents from other

components of the agency or external stakeholders.  *See* Fairman Decl. ¶¶ 7, 10; Pl.'s Opp'n at 7; Pl.'s Reply at 4.

In short, DOI's declaration does not "'set[] forth the search terms and the type of search performed'" for responsive records "with the specificity [this Circuit's] precedent requires," *Reps. Comm.*, 877 F.3d at 403 (first alteration in original) (quoting *Oglesby*, 920 F.2d at 68), and the Court therefore "lacks any basis for 'determin[ing] if the search was [sufficiently] adequate in order to grant summary judgment,'" *id.* at 405 (alterations in original) (quoting *Oglesby*, 920 F.2d at 68).  The agency must either carry out a new search or supplement its declarations.

In reaching this conclusion, the Court is mindful of the D.C. Circuit's admonition in *In re Clinton*, 973 F.3d 106 (D.C. Cir. 2020), that, in evaluating the adequacy of an agency's search under FOIA, a district court may not "authorize[] an improper Federal Records Act-like inquiry to uncover purely hypothetical" records, *id.* at 116.  While FOIA limits a reviewing court to determining whether the agency has "conduct[ed] a search reasonably calculated to uncover all relevant documents," *id.* (internal quotation marks and emphasis omitted), the FRA "requires federal agencies to protect against the removal or loss of records, and allows certain parties to bring suit to compel enforcement action to recover unlawfully removed or destroyed documents," *id.* (citing 44 U.S.C. §§ 3105, 3106(a)); *see also Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018) (mem.) (Under the FRA, "[w]hen documents have been unlawfully removed or destroyed, agency heads 'shall initiate action through the Attorney General' to recover the records" and may be compelled to do so by certain litigants. (quoting 44 U.S.C. § 3106(a))).  Thus, when considering a challenge under the FRA, the reviewing court may reach the broader question of "whether there might exist any other documents" sought by a plaintiff, even if the plaintiff can point to nothing more than speculation in support of its claim

that the agency has withheld such documents. *In re Clinton*, 973 F.3d at 116 (internal quotation marks omitted). In contrast, this inquiry is foreclosed by FOIA unless a plaintiff proffers more than speculation in support of its claim that additional documents exist, and even then, review centers on the adequacy of the agency's efforts to locate the missing records rather than the success of those efforts.

In the instant case, requiring DOI to undertake additional steps to search for and retrieve the missing drafts of Secretarial Order No. 3348 and related Secretary-level communications does not implicate the Circuit's concern with authorizing discovery in the guise of reviewing the adequacy of a search under FOIA. First, plaintiff's assertion that these two sets of records must exist and are conspicuously absent from DOI's productions is, as explained above, a common-sense assumption based on the premise that the agency complies with federal law when developing and adopting policies, not speculation. Second, even if plaintiff's claims were speculative, DOI's description of its searches is facially inadequate, requiring remand to the agency independent of any further doubts cast on its declarations by plaintiff. Though, at this stage in the proceedings, remand to the agency for further steps to recover these records pursuant to FOIA is appropriate, if DOI's renewed searches still fail to produce any drafts of Secretarial Order No. 3348 or any substantial communications to or from Secretary Zinke about the Order, an enforcement action under the FRA may, as plaintiff suggests, *see* Pl.'s Opp'n at 10 & n.2, be merited.

The inadequacies described above are themselves sufficient to warrant denial of summary judgment, but plaintiff also raises three further challenges to the agency's search. These challenges are discussed in turn to guide DOI's efforts to fulfill its FOIA obligations on remand.

###### B.   Search for Communications and Data from Personal Accounts and Devices

First, plaintiff argues because DOI only "partially search[ed] Secretary Zinke's personal email, text messages, and other forms of record communication" and did not search the "personal emails, texts, and other forms of record communications" of other, unidentified high-ranking DOI officials, the agency has not exhausted its search of officials' personal devices and accounts. Pl.'s Opp'n. at 7; *see also* Pl.'s Reply at 5; Pl.'s Suppl. Mem. at 5, 7.  DOI, for its part, declares that it searched "Secretary Zinke's personal email," Fairman Decl. ¶ 10, and "that only Mr. Zinke's personal email was searched in this case because he was the only Departmental employee who had a demonstrated track-record of occasionally using his personal email in conversations related to Departmental business," Myrick Decl. ¶ 18.

FOIA applies only to materials qualifying as "agency records," 5 U.S.C. § 552(a)(4)(B), a category that "'extends only to those documents that an agency both (1) create[s] or obtain[s] *and* (2) control[s] . . . at the time the FOIA request [was] made,'" *Aguiar*, 865 F.3d at 735 (alterations, omission, and emphasis in original) (quoting *Judicial Watch, Inc.*, 726 F.3d at 216). The parties do not dispute that agency employees' communications on non-agency devices and accounts may constitute "agency records" under this definition.  *See Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 146 (D.C. Cir. 2016) ("[W]e agree with plaintiff-appellant that an agency cannot shield its records from search or disclosure under FOIA by the expedient of storing them in a private email account controlled by the agency head[.]"). Nevertheless, "a FOIA requestor is not entitled to a search of files specified by the requestor, but rather to a search of files 'that are likely to turn up the information requested.'"  *Tunchez v. Dep't of Justice*, 715 F. Supp. 2d 49, 54 (D.D.C. 2010) (quoting *Oglesby*, 920 F.2d at 68).  Federal law requires that official communications created on agency employees' personal accounts be "preserved in the appropriate agency recordkeeping system."  36 C.F.R. § 1236.22(b); *see also*

44 U.S.C. § 2911(a) (prohibiting agency employees from "creat[ing] or send[ing] a record using a non-official electronic messaging account" unless they properly preserve that record within the agency). Applying again the presumption of regularity, "in a typical case," searches of agency employees' personal accounts and devices "would be unnecessarily duplicative of a search" of the employee's agency records and therefore are not required under FOIA. *Judicial Watch, Inc. v. Dep't of Justice*, 319 F. Supp. 3d 431, 438 (D.D.C. 2018); *see also Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 241 F. Supp. 3d 14, 21–22 (D.D.C. 2017) (applying the presumption to conclude that an agency was not required to search a personal email account); *Wright v. Admin. for Children & Families*, No. 15-cv-218, 2016 WL 5922293, at *8–9 (D.D.C. Oct. 11, 2016) (same).

This presumption notwithstanding, DOI in fact searched former Secretary Zinke's personal email account, noting that he was known to use his personal email to conduct agency business. Myrick Decl. ¶ 18; *cf. Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 237 (D.D.C. 2017) (approving of agency's search of "the personal email account of one particular employee [who] . . . appeared to have conducted . . . business using a personal email account" (second omission in original) (internal quotation marks omitted)). As to the other types of Secretary Zinke's personal communications that plaintiff contends should be searched, plaintiff does not point to any specific facts in the record or countervailing evidence indicating that Secretary Zinke used these personal platforms to carry out agency business. *Hunton & Williams LLP*, 248 F. Supp. 3d at 237–38 (declining to require an agency to search for responsive text messages on employees' personal devices where the FOIA requester "d[id] not point to any evidence indicating that text messages were used for agency business or otherwise show that searching text messages would be likely to lead to responsive documents"). Nonetheless, paired

with the significant nature of the missing records—*i.e.*, missing drafts of a significant Secretarial Order and related Secretary-level communications—plaintiff's contention that responsive records may be located on former Secretary Zinke's personal devices or accounts is more than mere speculation, but entirely common sense.  If, as DOI claims, the agency has truly exhausted its search of its own records, former Secretary Zinke's personal devices and accounts are the next logical place to search for drafts that the Secretary should have reviewed and his related communications.[6]

The agency raises concerns about its ability to compel former Secretary Zinke, as a former DOI employee, to search for such records.  *See* Def.'s Reply at 3; Myrick Decl. ¶¶ 17–18, 19–20.  While the agency may lack the authority to compel a former employee to carry out a search of personal records, FOIA allows the Court to "direct the agency to ask" Secretary Zinke whether he used any personal platforms beyond the personal email address already searched to conduct agency business, to request that Secretary Zinke search his own files for any agency records they may contain, to detail "its best efforts" to retrieve records from the former Secretary, and to provide "any further evidence it is able to obtain."  *Brady Ctr. to Prevent Gun Violence v. Dep't of Justice* ("*Brady Ctr.*"), 410 F. Supp. 3d 225, 232 (D.D.C. 2019) (internal quotation marks omitted).  DOI must take these additional steps to confirm that it has completed an adequate search for Secretary-level communications and drafts of Secretarial Order No. 3348.

As to the personal communication platforms of other agency employees, plaintiff has offered no evidence, and DOI denies, that any agency employee other than Zinke used personal devices or accounts in relation to agency business.  Without more, widespread searches of

___
[6]    Of course, any such records should have been turned over to DOI for preservation within the agency's files. *See* 44 U.S.C. §§ 2911(a), 3105 (requiring agencies to "establish safeguards against the removal or loss of records"). A discovery of agency records in Secretary Zinke's personal possession without duplicates in the agency's custody would implicate a further possible violation of the FRA.

individuals' personal files would be inappropriate. *See Wright*, 2016 WL 5922293, at *8–9

(finding mere possibility that non-official channels may have been used to conduct agency

business insufficient to require additional searches by the agency).

  **C.**  **Search for Secretary Zinke's Communications and Data from Government Accounts and Devices**

  Second, plaintiff points to DOI's incomplete search for records located on Secretary

Zinke's agency devices.  Pl.'s Opp'n at 4, 7–8; Pl.'s Reply at 4–5.  A declaration by the

Departmental Records Officer in DOI's Office of the Chief Information Officer ("OCIO") states

that former Secretary Zinke was issued a government cell phone for domestic use (the "Original

Phone") and a separate government cell phone for international use (the "International Phone").

Alspach Decl. ¶¶ 2–3.  DOI declares that "[a]ny use of Departmental email" on the Original

Phone "was archived in the Department's email database," *id.* ¶ 2, but other types of

communications, such as text messages or voicemails, are stored only on the devices.  Zinke lost

his Original Phone in November 2018, and was issued a replacement phone (the "Replacement

Phone").  *Id.* ¶ 4.  As a security measure, OCIO "attempted to remotely 'wipe'" the data from the

Original Phone, but "unintentionally" wiped the contents of the International Phone rather than

the Original Phone.  *Id.* ¶ 5.  DOI claims that "[t]here is no way to restore the data on the

International Phone following the wipe," and that it therefore cannot search Secretary Zinke's

communications from this device.  *Id.*  Zinke found the lost Original Phone, with its data fully

intact, in December 2018, shortly before he resigned his position on January 2, 2019.  *Id.* ¶¶ 6–8.

  At the time of Secretary Zinke's resignation, in the midst of a federal government

shutdown that limited OCIO's capacity immediately to process his records, OCIO collected all

three cell phones and "requested the Secretary's passcodes in order to download the contents of

the phone[s] for Federal records purposes."  *Id.* ¶ 8.  Before accessing the data, OCIO sent the

phones to DOI's Office of the Inspector General ("OIG"), which "collected data on the phones," but declined to provide the data to OCIO because it related to an ongoing OIG investigation. *Id.* ¶ 9.  OCIO next attempted to extract the data itself.  It successfully did so for the Replacement Phone, but claims that "the Replacement Phone did not contain any text messages." *Id.* ¶ 10.  As to the Original Phone, OCIO declares that the passcode provided by the Secretary "did not work," and that, "[w]ithout the passcode the Department has no technological means, and knows of no means, to access" the phone, *id.* ¶ 11, overlooking, of course, the fact that agency's own OIG apparently has a backup copy of the data.  In all, then, of Zinke's three government cell phones, DOI represents that the International Phone was not searched because the data is allegedly irretrievably lost; makes no statement as to whether the Replacement Phone data was searched for responsive records but nonetheless declares that the Replacement Phone did not contain any text messages at all from the month during which Secretary Zinke used it; and claims that the agency has no means of accessing the Original Phone data—data stored on an agency-owned device—without a passcode.  DOI's declarations are silent as to whether the agency attempted to search the phone data, or any other related records, held by OIG and what efforts, if any, it made to retrieve the data from the Original Phone in the absence of a passcode, including whether it attempted to confirm the passcode with Secretary Zinke.  *See* Fairman Decl.; Alspach Decl.; Myrick Decl.

Plaintiff contends that this tangled story of missing devices and irretrievable data is suggestive of "bad faith" or "malfeasance" on the part of the agency.  Pl.'s Reply at 9; *see also id.* at 8–9; Pl.'s Opp'n at 11 n.3.  The largely cooperative and productive relationship between the parties throughout the course of this search, *see supra* Part I.B, renders these allegations "unpersuasive" in the first instance.  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1358 (D.C.

Cir. 1983).  Nonetheless, the agency's description of its search of Secretary Zinke's government devices gives rise to "positive indications of overlooked materials," *Reps. Comm.*, 877 F.3d at 402 (internal quotation marks omitted), that DOI's declarations clearly state were not searched for responsive records: the data on Secretary Zinke's International Phone, the data on Secretary Zinke's Original Phone, and the copies of these records collected by DOI's OIG.

As to the erased data on the International Phone, DOI declares that "[t]here is no way to restore the data . . . following the wipe."  Alspach Decl. ¶ 5.  Plaintiff casts doubt on the truth of this claim, finding it unlikely that the agency has no backup of data stored on an agency-owned device.  Pl.'s Opp'n at 11 n.3; Pl.'s Reply at 9.  In cases involving electronic records that the government claims have been destroyed or otherwise rendered inaccessible, the D.C. Circuit has required that agencies "inform the court and plaintiffs whether backup tapes of any potential relevance exist" and "whether there is any practical obstacle to searching them."  *Ancient Coin Collectors Guild*, 641 F.3d at 515.  This requirement is satisfied by "an affidavit from an information-technology professional . . . that describes the . . . backup system potentially containing" responsive records and "describes any practical obstacles to searching that system." *Parker v. U.S. Immigr. & Customs Enf't*, 238 F. Supp. 3d 89, 105 (D.D.C. 2017); *see also Safety Rsch. & Strategies, Inc. v. Dep't of Transp.*, 903 F. Supp. 2d 1, 7 (D.D.C. 2012) (same).  DOI's declarations fail to provide this information, critical to assessing the adequacy of its search for potentially responsive records on the International Phone, or to indicate at all whether the agency made any attempt to retrieve the lost data, and must do so on remand.

As to the Original Phone, DOI claims that the passcode for the phone provided by Secretary Zinke "did not work."  Alspach Decl. ¶ 11.  This explanation of DOI's inability to search the Original Phone raises the obvious question of why the agency, upon realizing that the

passcode was incorrect, did not simply ask Secretary Zinke to confirm the passcode.  DOI protests that it "cannot force . . . [Zinke] to provide the passcode as he is no longer an employee of the Department."  Alspach Decl. ¶ 11; *see also* Myrick Decl. ¶ 15 (DOI "ha[s] no power to compel a now-private citizen to provide a working passcode.");  Def.'s Reply at 3.  While the agency may lack the authority to compel former Secretary Zinke to provide a passcode, as with Secretary Zinke's personal devices and accounts, the Court may, pursuant to FOIA, direct the agency to ask him for the passcode, describe its efforts to obtain this information, and proffer any further evidence that results.  *See Brady Ctr.*, 410 F. Supp. 3d at 232.  Even if they prove unsuccessful, DOI is obligated under FOIA to undertake these additional steps to search the Original Phone.

DOI further states, without elaboration, that "[w]ithout the passcode the Department has no technological means, and knows of no means, to access" the Original Phone.  Alspach Decl. ¶ 11.  As with the International Phone, DOI has failed through this conclusory statement to provide the requisite information about any potential backups of the data stored on the Original Phone, and must do so.  Moreover, the agency must explain in greater detail the efforts it made to retrieve the data, beyond entering the incorrect passcode, and why it lacks *any* "technological means" to access the Original Phone without a passcode.  *See Parker*, 238 F. Supp. 3d at 105.[7]

Finally, DOI represents that before OCIO's unsuccessful efforts to extract data, DOI's OIG "collected data on the phones."  Alspach Decl. ¶ 9.  The agency claims that "OIG declined to provide any data" to OCIO "because it related to an [ongoing] OIG investigation."  *Id.*

---

[7]       In the alternative, DOI contends that "[p]laintiff has failed to make any showing, beyond speculation, that the Secretary used his cell phone to review or edit drafts of" Secretarial Order No. 3348.  Def.'s Reply at 6.  This argument misconstrues plaintiff's burden, which is only to provide non-speculative "positive indications of overlooked materials.'"  *Reps. Comm.*, 877 F.3d at 402 (internal quotation marks omitted).  The agency has conceded that, in responding to a FOIA Request that specifically sought text messages, it did not carry out a complete search of Secretary Zinke's government cell phones, the logical location for such communications.  *See*

Though not clear on this point, the declaration suggests that OCIO's denied request was made as part of its routine processing of Secretary Zinke's records after his departure. *See id.* The declaration does not indicate whether DOI-OS or OCIO requested the data from OIG in relation to plaintiff's FOIA Request, a request which now, more than two years after the initial request was denied, might be successful, in the event that OIG has completed the investigation that prevented disclosure in January 2019. Further, the declaration does not specify from which of Secretary Zinke's three government-issued phones OIG was able to collect data, leaving open the possibility that OIG has the information from the Original Phone or the International Phone that DOI has otherwise been unable to retrieve. If the data held by OIG is in fact the missing, irretrievable data from either device, DOI has not met its obligation under FOIA to attempt to retrieve these records from OIG. *See Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (holding that an agency "'cannot limit its search to only one record system if there are others that are likely to turn up the information requested'" (quoting *Oglesby*, 920 F.2d at 68)). DOI must either explain the efforts it made to obtain the collected government-device data from OIG in responding to the FOIA Request or make a renewed request to OIG for the data.

### D.  Failure to Search Trump Transition Team Records

Finally, plaintiff challenges DOI's failure to search the records of the Trump Transition Team for DOI and, in particular, the agency's failure to search the files of David Bernhardt, the Trump Transition leader for DOI who later became Deputy Secretary of the Interior and, eventually, Zinke's successor as Secretary of the Interior. Pl.'s Opp'n at 4–5; Pl.'s Reply at 6–8. DOI admits that it did not search the Transition Team's or Bernhardt's files, but counters that "FOIA does not extend to documents created or held by a President's Transition Team" and that

---

Def.'s Reply at 6; Alspach Decl. ¶ 11. That admission of overlooked materials is itself enough to render DOI's search inadequate as to these records.

the agency therefore had no obligation to search for or produce any responsive records held by the Transition Team, other than records that were transmitted to agency employees and thereby became "agency records."  Def.'s Reply at 7.

As DOI correctly notes, and plaintiff concedes, Pl.'s Reply at 6, "[t]he law in this Circuit is well-settled that FOIA does not extend to documents created or held by a President's Transition Team," Def.'s Reply at 7, as a completely separate entity from any government agency, except to the extent that such documents independently satisfy the requirements to qualify as an "agency record" under the definition set forth *supra* Part III.B.  *See Wolfe v. Dep't of Health & Hum. Servs.*, 711 F.2d 1077, 1082 (D.C. Cir. 1983); *Democracy Forward Found. v. GSA*, 393 F. Supp. 3d 45, 53–54 (D.D.C. 2019).  Thus, for transition team files to qualify as "agency records," the agency must have created or obtained the files, must have control over them at the time of the FOIA request, and must have "integrate[d] the documents with agency files or records" such that there exists a "real nexus between the documents and the agency other than their physical location."  *Wolfe*, 711 F.2d at 1080; *see also Aguiar*, 865 F.3d at 735.

This clear Circuit precedent notwithstanding, plaintiff contends that DOI was nonetheless obligated under FOIA to search at least some Transition Team files.  Pl.'s Reply at 6–7.  In support of this claim, plaintiff points to the Trump Transition's practice of forming and deploying agency "landing teams," groups tasked with "gather[ing] information about their assigned agency between the election and the inauguration to inform the incoming administration and help them prioritize the issues where attention is most needed."  Pl.'s Reply, Ex. 13, U.S. GOV'T ACCOUNTABILITY OFF., GAO-17-615R, PRESIDENTIAL TRANSITION: INFORMATION ON ETHICS, FUNDING, AND AGENCY SERVICES 7 (2017) ("GAO Report"), ECF No. 34-1.  According

to a GAO report on the Trump Transition, however, "[m]ost team members [were] not federal employees" at any time during their work for the Transition Team.  *Id.* at 6.

Separate from the landing teams, after President Trump's inauguration, his Administration followed the practice, common to new administrations, of appointing individuals "into temporary agency positions under special hiring authorities to assist the Transition Team." *Id.* at 7.  Individuals hired under these authorities "are federal agency employees" serving as temporary political appointees in the early days of a new administration.  *Id.* at 8.  The Trump Transition Team appointed 536 such individuals, known as the "beachhead team," to take up positions at various agencies "as of Day One" of the Trump Administration.  Pl.'s Notice of Suppl. Auth., Ex. 17, Memorandum from Vice President-elect Mike Pence, Transition Chairman, to President-elect Donald Trump (Jan. 19, 2017) ("Pence Memorandum") at 3, ECF No. 38-1. Many of these temporary appointees "remained in place for several months because of the new administration's slow staffing process."  Pl.'s Reply, Ex. 14, PARTNERSHIP FOR PUBLIC SERVICE CENTER FOR PRESIDENTIAL TRANSITION, AGENCY TRANSITION GUIDE 17 (1st ed. 2017) ("AGENCY TRANSITION GUIDE"), ECF No. 34-2.

Plaintiff argues that DOI was obligated to search the records of both the Trump Transition's landing team for the agency and Bernhardt, but in making this contention, plaintiff conflates the landing team and the so-called "beachhead team."  Plaintiff states that "[l]anding teams are teams of agency officials picked by the President to lead the agency on an interim basis between the start of inauguration until enough political appointees are confirmed by the Senate to lead that particular agency," Pl.'s Reply at 7 (citing AGENCY TRANSITION GUIDE at 16–19); *see also id.* at 2 (asserting that "agency transition 'landing teams' are considered part of the federal agency for purposes of FOIA" (emphasis omitted)), but plaintiff's own evidence does not

support this description of a landing team's role and function within an agency, *see* Def.'s Sur-Reply at 2–4.  To the contrary, plaintiff's exhibits make clear that, though some federal employees may be landing team members, the landing team itself is part of the Transition Team, not the relevant agency.  *See* GAO Report at 6; AGENCY TRANSITION GUIDE at 16–17.  Though certain individuals may serve both as landing team members and temporary political appointees for a new administration, the two groups are distinct.  Landing team members who are not designated as temporary political appointees remain part of the Transition Team and do not become agency employees.  *See* AGENCY TRANSITION GUIDE at 17.  Likewise, temporary political appointees installed by a new administration at a particular agency are agency employees during their tenure, but are not necessarily part of the landing team.  *See* Pence Memorandum at 3 (distinguishing between agency landing teams and the "beachhead team").

Taking as true these third-party characterizations of the landing team and the beachhead team, the records of the beachhead team's temporary political appointees, who serve as agency employees, are of course subject to FOIA, but the records of the landing team, whose members are affiliated with the Transition Team but are not agency employees, are not "agency records" unless they are "created" or "obtained" by the agency.  *See Forsham v. Harris*, 445 U.S. 169, 182 (1980).  This logic is supported by the Transition Act, which specifies that employees of a presidential Transition Team "shall not be held or considered to be employees of the Federal Government."  3 U.S.C. § 102 note; *see also Ill. Inst. for Continuing Legal Educ. v. Dep't of Lab.*, 545 F. Supp. 1229, 1232–33 (N.D. Ill. 1982) (citing the Transition Act in finding that "[t]he autonomy accorded the transition staff compels the conclusion that the staff is . . . not an 'agency' within the meaning of . . . the FOIA"); Def.'s Sur-Reply at 4–5.

Plaintiff resists this conclusion, arguing that "landing team records are, by definition, those that 'integrate the documents with agency files or records,'" within the meaning of *Wolfe*, Pl.'s Reply at 7 (quoting *Wolfe*, 711 F.2d at 1080), but that argument reverses the roles of the landing team and the agency during a presidential transition.  The function of the landing team is to receive information from the agency and share it with the incoming administration, not to provide information from the Transition Team to the agency.  *See* GAO Report at 7.  If files received from DOI in the course of this process are in the landing team's files, that fact indicates that agency documents have been integrated into the Transition Team's records.  FOIA, however, requires that documents from the landing team have been integrated into the agency's records in order to compel production.  The landing team's records therefore operate to merge the two entities' records only to the extent that they are present in the agency's repositories.  *See Wolfe*, 711 F.2d at 1080.

Perhaps realizing this flaw in its argument, plaintiff recasts its challenge with respect to Transition Team records in its supplemental briefing as a challenge to DOI's failure to search for "[t]ransition and transition landing team records obtained by DOI or created by DOI."  Pl.'s Suppl. Mem. at 6.  This reframed challenge is somewhat more successful.  Plaintiff's FOIA Request sought all documents related to Secretarial Order No. 3338, including "[a]ll communications with the Trump Presidential Transition Team."  BLM FOIA Request at 2.  As described *supra* Part I.B, DOI's initial custodian searches and supplemental searches of Secretary Zinke's files for records responsive to this Request focused on the subject matter of Secretarial Order No. 3338, without regard to the author or recipient of a particular document.  Any correspondence in the agency's records to or from members of the Trump Transition Team concerning the Order should, in theory, have fallen within those search parameters.

DOI says that its searches did not suggest that any responsive Transition Team documents were within the agency's files, Def.'s Sur-Reply at 6 (citing Fairman Decl. ¶¶ 9–10), but in fact, its primary declaration, cited in support of this assertion, is completely silent as to records related to the Transition Team, *see* Fairman Decl.  The declaration therefore provides no basis on which to determine whether the searches DOI has undertaken to date encompassed responsive Transition Team records now integrated in agency records.  In light of the insufficiency of DOI's declarations as to its initial custodian searches and supplemental searches of former Secretary Zinke's files, described *supra* Part III.A, and this specific omission with respect to Transition Team documents, the record is deficient as to whether DOI adequately searched for responsive Transition Team documents within its records.  DOI's renewed search for records or supplemental declarations should therefore make clear the efforts taken by the agency to identify any records involving the Transition Team in the course of its subject-matter or search term-based searches.

As part of its critique of DOI's search for records associated with the Transition Team, plaintiff hones in on DOI's failure to search the records of David Bernhardt, who had a leadership role on the Trump Transition for DOI and was Zinke's eventual successor as Secretary, and who plaintiff believes was likely involved in the repeal of Secretarial Order No. 3338 and the issuance of Secretarial Order No. 3348 in his Transition Team role.  Pl.'s Opp'n at 7; Pl.'s Reply at 7–8.  DOI avers that Bernhardt "did not work for the Department" in any capacity, Myrick Decl. ¶ 13, and "had no Departmental email account or phone" during the time period covered by the FOIA Request, *id.* ¶ 14.  Indeed, even plaintiff admits that Bernhardt "became Deputy Secretary of the Interior in July 2017," more than three months after Secretarial Order No. 3338 was repealed and Secretarial Order No. 3348 was enacted.  Pl.'s Opp'n at 5.

Plaintiff nonetheless insists that, because Bernhardt "was leader of the Interior Landing Team," "any records obtained or created by [him] during the early months of the Trump administration would be subject to FOIA."  Pl.'s Reply at 7–8.

The evidence plaintiff proffers in support of this contention supports only the conclusion that Bernhardt was involved in the Trump Transition for DOI.  *See* Snape Decl., Ex. 9, *Donald Trump Presidential Transition Team*, Ballotpedia, ECF No. 30-14 (listing Bernhardt as a member of the Trump Transition's Agency Action Team for Interior); Pl.'s Reply, Ex. 15, *Economic Landing Teams Announced*, Politico (Nov. 21, 2016, 2:01 PM), ECF No. 34-3 (referring to Bernhardt as the Trump transition official "handling the Interior Department"). Plaintiff has not pointed to anything on the record that establishes Bernhardt was a member of DOI's landing team during the relevant time period, let alone that he was one of the temporary political appointees installed by the Trump Administration to whom FOIA would apply.  This weak showing is insufficient to overcome the presumption of good faith as to DOI's representation that Bernhardt was not an agency employee when Secretarial Orders Nos. 3338 and 3348 were being discussed and implemented, and therefore does not suffice to obligate DOI to undertake a search of Bernhardt's records.

Finally, to the extent that plaintiff requests that DOI be required to search files held by the Transition Team or Bernhardt, third parties to the litigation who are not agencies or agency employees, FOIA does not provide for such a remedy.  The statute authorizes only the relief of "enjoin[ing] the agency from withholding agency records" and "order[ing] the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Thus, an agency is obligated under FOIA only to carry out a reasonable and adequate search of its own records "because 'possession or control' of the documents at issue is, in most circumstances, 'a

prerequisite to FOIA disclosure duties.'"  *Gawker Media, LLC v. Dep't of State*, 266 F. Supp. 3d

152, 158 (D.D.C. 2017) (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S.

136, 152 (1980)).  Moreover, FOIA does not "permit private actions to recover records" outside

the agency's custody.  *Reps. Comm. for Freedom of the Press*, 445 U.S. at 150; *see also*

*Founding Church of Scientology of Wash., D.C. v. Regan*, 670 F.2d 1158, 1164 (D.C. Cir. 1981)

(reversing district court order directing an agency to undertake a search for records in the

possession of a third-party, non-governmental organization).

 DOI is therefore not obligated to undertake a specific search for records of the Transition

Team or David Bernhardt within the agency's files or to attempt to search records held by the

third-party Transition Team or Bernhardt.  The agency must, however, either clarify in its

declarations the extent to which its searches to date encompassed and identified records

consisting of correspondence between DOI employees and the Trump Transition Team or

expand its search to include these records.

## IV. CONCLUSION

 For the foregoing reasons, DOI's Motion for Summary Judgment, ECF No. 29, and

plaintiff's Cross-Motion for Partial Summary Judgment, ECF No. 30, are both denied without

prejudice.  Genuine issues exist as to the adequacy of DOI's search for responsive records that

preclude summary judgment for either party.  On remand, DOI must either supplement its

declarations or undertake additional searches for responsive records, consistent with this

Memorandum Opinion.  These renewed efforts must provide additional information as to DOI's

efforts to recover data from former Secretary Zinke's Original Phone and International Phone, as

well as the data OIG retrieved from those government-owned devices, and to retrieve records

located on former Secretary Zinke's personal accounts and devices, and must clarify whether

DOI's original or renewed searches were designed to identify responsive records consisting of communications between DOI employees and members of the Trump Transition Team.

Given that this case has been pending for nearly four years, since June 2017, and in light of the relatively narrow disputes remaining between the parties, DOI is directed to complete its additional searches and/or supplement its declarations promptly by April 23, 2021, and the parties are further directed to submit, by that same date, a joint status report as to the progress, if any, the parties have made to narrow the remaining disputed issues and to propose a schedule to govern further proceedings in this matter.

An order consistent with this Memorandum Opinion will be entered contemporaneously.


Date: March 9, 2021

_____
BERYL A. HOWELL
Chief Judge